OPINION OF THE COURT
Laura L. Jacobson, J.
Defendant was arrested and charged with the violation of Penal Law § 230.00, a class B misdemeanor. A bench trial was held before me on May 2, 1994.
*635 The People presented the testimony of Police Officer John Fisher, an officer assigned to the Brooklyn South Public Morals Division (BSPMD). Officer Fisher testified that on January 12, 1994, he placed a telephone call to a specific number to set up a "rendezvous” with someone he believed to be a prostitute. That belief was based on a complaint the officer’s unit had received several months before.
Officer Fisher testified that after several telephone calls, he was instructed to go to 3024 Avenue W. He did so and was met at the door by a female, white, who weighed about 300 pounds and had blond hair. Officer Fisher identified this woman as the defendant. He followed the defendant into the building to apartment No. 2A. When he got into the apartment, he testified that the defendant told him that it would cost him $100 and that he should get undressed and go to the bedroom. He then asked the woman what he would get for $100 and the woman said "S & M”.* He said that he told the defendant he was not interested in "S & M” and was told by the defendant that straight sex was $80 and oral sex was $20. The officer then testified that he refused to undress, and the defendant directed him to go into the bedroom and put on a video while she slipped into something comfortable. The officer testified that in the bedroom were tapes of "S & M” sex videos and a dildo. The officer put on a tape and then transmitted a code to the arrest team to set into place the apprehension of the defendant. The officer subsequently opened the front door and admitted the arrest team. Defendant then was advised to get dressed and Detective Mendez placed her under arrest for prostitution.
On cross-examination, the officer acknowledged that he had a tape recording device in his pocket but had not recorded any of the initial telephone conversations. The recording device was taken to the location and was on, but the tape was not audible. The officer also acknowledged that he had a transmitter connected to his supervisor and was able to contact the rest of his team to let them know his location. However, the officer acknowledged that, inexplicably, his communication device was not on the entire time the alleged discussion was held between defendant and the witness.
The People then presented the testimony of Detective Luis Mendez. Detective Mendez testified to the fact that on Janu *636 arv 12, 1994 at approximately 2:10 p.m., he went into apartment No. 2A at 3024 Avenue W. and arrested Georgia A., the defendant. Detective Mendez testified to the fact that one of the items seized in defendant’s apartment was a business card imprinted with the logo "Bad Girl — lingerie and accessories”. The card contained no reference to sex for money. The People then rested.
Defendant Georgia A. then took the stand and was sworn in as a witness. Ms. A. testified that she is currently unemployed but has, in the past, designed and sold jewelry, given psychic readings and been involved in creating and delivering "S & M” fantasies.
Ms. A. testified that on January 12, 1994, she made an appointment by telephone with a man to have an "S & M” experience. Ms. A. said the man (Officer Fisher) wanted to give her money, but she said no and she sent him into the bedroom and directed him to take his clothes off. He refused to take his clothes off, which didn’t upset her because typically, she testified, men involved in the "S & M” experience needed to be dominated and ordered around. Ms. A. testified that she went into the bathroom to change into her outfit to take her position as the dominatrix. Ms. A. explained that in "S & M” sex no actual intercourse or sexual touching took place. Instead, the coordinator of the activity, the dominatrix, a role played by Ms. A., ordered and directed the passive partner to perform certain acts. In the instant matter, when the man (Officer Fisher) refused to take his clothes off, Ms. A. understood that he was just being macho and wanted to be ordered around. Ms. A. testified that as the dominatrix, she makes an assessment as to what a customer wants and/or needs and then performs that desire. Ms. A. stressed the fact that there is no sex or sexual conduct like sexual intercourse or physical contact with the person’s genitals. Ms. A. further testified that as a dominatrix, she wore a specific costume— black gloves, leather corset, panties and high heels. She was putting that costume on when she was arrested. Ms. A. testified that she did not offer to exchange sex for money, and that she did not enjoy sex all that much.
On cross-examination, Ms. A. acknowledged that "S & M” sex required many props which included whips, chains, handcuffs, etc. Ms. A. stated that all those items were in drawers in the apartment but that "S & M” video tapes were in evidence everywhere.
*637 On the question of money, Ms. A. acknowledged that she expects a tribute for her performance and the exchange of money usually takes place after the session.
The information elicited from Ms. A. on direct and cross-examination concerning the activities of a dominatrix was uncontroverted. Her testimony was educational as well as entertaining and provided an insight into an area of behavior which is not often talked about in public. One of the points Ms. A. stressed was that the usual fantasy expressed by a participant in the "S & M” fantasy is that of a bad little boy who wants to be spanked — hence the paraphernalia of paddles and whips. Sometimes a participant wishes to lick the feet of the dominatrix. Ms. A. was quite adamant when she stated that a person involved in the "S & M” sexual life did not want intercourse, and that as a dominatrix and participant in that life, she never offered, nor would she offer, to have intercourse with anyone seeking her services.
After all the evidence was heard and both sides rested, I reserved decision.
Section 230.00 of the Penal Law provides that "A person is guilty of prostitution when such person engages or agrees or offers to engage in sexual conduct with another person in return for a fee.” The term sexual conduct is not defined in the statute but has since been described in various cases. That conduct includes acts of masturbation, homosexuality, sexual intercourse, or physical contact of the person’s clothed or unclothed genitals, buttocks or a woman’s breast. (People v Block, 71 Misc 2d 714 [1972].) But the sada-masochistic acts described by Ms. A.: foot licking, spanking, domination and submission do not appear to fit within the category of sexual conduct referred to in the statute. Accordingly, I do not believe the Legislature intended to apply the crime of prostitution to the basic sado-masochistic relationship as described by Ms. A.
With respect to Officer Fisher’s testimony, I find it credible, up to a point. I do not believe Ms. A. offered to perform intercourse and/or oral sex. I believe that Officer Fisher entered Ms. A.’s apartment intending to participate in an arrest and nothing was going to deter him from that end result. Further, it was inexplicable that the officer’s communication device would be turned on only to summon the arrest squad, and would not be left on so that the entire "transaction” could be monitored.
*638 Accordingly, based on the evidence and testimony submitted at trial, I find that the People have failed to prove their case beyond a reasonable doubt. The defendant is not guilty and the charges are dismissed.

 At one point, the officer was asked to define "S & M” and he said "sadomasochistic — you know, rough sex”.